20965, 20966.  BROWNE *et al.* v. HENDLEY *et al.,* Executors; and *vice versa.*

HAWKINS, Justice. Robert A. Browne and Mrs. Katherine Askew, as Trustee for Barbara Askew, brought a declaratory-judg-

ment action in two counts, in the Superior Court of Fulton County, Georgia, against Albert G. Hendley and E. W. Gottenstrater, as Executors and Trustees under the will of Mrs. Agnes Belle Isle, deceased.

By will, Alvin Looney Belle Isle left one-half (as defined therein) of his estate to trustees, who were directed to pay the income therefrom during her lifetime to his surviving widow, Agnes Belle Isle, and, at her death, to distribute the principal "to such person or persons and in such manner as my said wife may by her Last Will and Testament direct or appoint." If the surviving widow failed to exercise the power of appointment, the testamentary trust in the will provided that the principal be added to another trust established in the will.

On September 23, 1952, subsequently to the death of Alvin Looney Belle Isle, Agnes Belle Isle executed and delivered a document to Katherine Askew, as Trustee for Barbara Askew, a minor daughter of Katherine Askew, and a granddaughter of Agnes Belle Isle. A copy of this document was delivered to the executors of the will of Alvin Looney Belle Isle and to the trustees of the trust established therein for the benefit of Agnes Belle Isle as aforesaid.

The said document of September 23, 1952, with portions thereof immaterial to this controversy deleted as indicated, is as follows:

"Whereas, under Item 3 of the will of my late husband Alvin Looney Belle Isle, I am given the entire income from the trust therein created and general power to appoint the corpus of said trust at my death, and

"Whereas, I now desire to make a gift to my granddaughter Barbara Askew of a 1½% undivided interest in and to said trust and the property thereof, both income and principal,

"Now, therefore, in consideration of the premises and for the purpose of making a gift to my said granddaughter, I, Agnes Belle Isle, do hereby transfer, assign, convey and release unto Katherine Askew as Trustee (hereinafter called the Trustee) for my said granddaughter Barbara Askew, a 1½% undivided interest in and to said trust created for my benefit under Item 3 of the will of my said husband and in and to all right, title and interest in the property now or hereafter held by said trust and in and to all sums due and to become due or payable to me from said trust, and I further hereby release my right to exercise my power of appointment, in regard to said 1½%

undivided interest in and to said trust, except for the benefit of my said granddaughter Barbara Askew, or her said Trustee if she is then a minor, and I hereby covenant and agree that I will exercise my power of appointment in regard to a 1½% undivided interest in and to said property, in favor of my said granddaughter or her said Trustee if she is then a minor.

"It is my purpose and intent by this trust to divest myself of all right, title, interest, equity or power in regard to a 1½% undivided interest in and to said trust and the property thereof so that after the execution of this instrument I shall have no right, title, interest, equity or power in or to said 1½% undivided interest or the income therefrom.

"Said Trustee shall pay over all income received hereunder to my granddaughter Barbara Askew in semi-annual or more frequent installments. Said Trustee shall hold all principal received by her hereunder in trust and shall invest and reinvest the same and shall pay all income therefrom over to said Barbara Askew in semi-annual or more frequent installments. Said Trustee shall be authorized at any time and from time to time to encroach on such corpus in such amounts as she may deem for the best interest of my said grandchild. When said Barbara Askew is 21 years of age this trust shall terminate and said Trustee shall deliver to her all property then held by the Trustee hereunder and thereafter all payments of income shall be paid to my said grandchild directly without the intervention of said Trustee. Should a legal guardian be appointed for my said grandchild Barbara Askew, then on demand of said guardian this trust shall terminate and all property then in the hands of the Trustee shall be delivered to said guardian. It is the purpose of this trust to convey full fee simple title to said 1½% undivided interest to my said grandchild as fully as she is able to receive the same under the law of Georgia. Should my said grandchild die before becoming 21 years of age, then said property, including said income, shall be delivered to her estate in fee simple. . ." The document did not recite any consideration.

A substantially similar, but separate, document likewise was executed and delivered with respect to each of eleven other grandchildren of Mrs. Agnes Belle Isle. Each such grandchild who then was of age, including Robert A. Browne, a plaintiff herein, was a direct party thereto in his or her individual capacity and without an intervening trustee.

Agnes Belle Isle died in December, 1958; her will executed July 24, 1957, was probated; and Albert W. Hendley and E. W. Gottenstrater qualified as executors and trustees thereof. Said probated will of Mrs. Agnes Belle Isle contained the following provision:

"Item III.

"A. All the rest, residue and remainder of my property of every kind and description, and wherever located, including any lapsed or void legacy or devise and any property over which I may have the power of disposition or appointment, including all of the property over which I have the power of disposition or appointment pursuant to the provisions of Item 3 of the Last Will and Testament of my deceased husband, Alvin Looney Belle Isle, as said Last Will and Testament appears of record in the Court of Ordinary of Fulton County, Georgia, I give, devise, and bequeath to Trustees hereinafter named upon the uses and trusts hereinafter set out.

"B. Said Trustees shall invest and reinvest said property and shall pay the net income therefrom annually from the time of my death until the termination of this trust as follows: (a) 15% of any such annual net income shall be distributed share and share alike, per stirpes, among the issue of my body, exclusive of my children, surviving at the time of any such distribution, it being the intention hereof to continue income payments from my late husband's estate assigned during my lifetime by me to, or for the benefit of, my grandchilddren. . . (c) The annual net income remaining for any year after making the distributions above required therefrom shall be distributed among the issue of my body then surviving, share and share alike, per stirpes.

"C. When all of my children shall be deceased, the property then remaining shall be divided and distributed among the issue of my body, share and share alike, per stirpes; if I shall not then be survived by any such issue of my body, such property shall be divided and distributed among the persons who would have been entitled thereto under the laws of descent and distribution of the State of Georgia if I had died intestate at that time. On or about September 23, 1952, I signed certain papers assigning certain of my income during my lifetime to my grandchildren and purporting to exercise, to release, or to agree to exercise partially a power of appointment in favor of said grandchildren. I am reliably

advised and informed that any portions thereof to take effect at and after my death are legally ineffectual. The general effect of the provisions hereof is to continue like income payments to my grandchildren and to defer vesting of any related principal in them from the date of my death until all of my children are deceased. Should any of my grandchildren or any other person elect to claim any interest in the income or principal of my estate or any trust therefrom by virtue of any of said papers signed by me on or about September 23, 1952, irrespective of whether or not such claim is successfully negotiated, prosecuted, or settled, such grandchild or other person thereupon shall forfeit any share in interest or principal to which for any reason he or she otherwise thereafter may be entitled to receive hereunder and shall receive hereunder, in lieu thereof, the sum of $1.00 plus only such sum, if any, to which he or she is finally determined to be entitled under the provisions of any of said papers signed by me on or about September 23, 1952."

The petitioners sought a declaratory judgment in two counts, in which they asked: (1) Whether the forfeiture provision of Item III (C) of the will of Mrs. Agnes Belle Isle was an *in terrorem* provision, and, if so, whether it was valid; and (2) whether, if the forfeiture provision was invalid, the appointment by Mrs. Belle Isle in her will of the property specified in the twelve inter vivos instruments to the defendant trustees, rather than the grandchildren, was valid.

Counsel for the plaintiffs contend that the intent of Mrs. Belle Isle, drawn from the four corners of the inter vivos instruments, was twofold: (1) to transfer to her grandchildren as complete an interest in the specified property as was possible under the circumstances; and (2) to avoid Federal estate taxes to the extent possible.

On April 22, 1960, the court below held, as to Count I, that the provision sought to be construed therein was void "insofar as it attempts to impose a forfeiture of any legacy under the will by virtue of a claim to rights under the instruments executed by Mrs. Belle Isle on September 23, 1952." In respect to Count II it was held that the plaintiffs herein could take nothing by virtue of the instruments of September 23, 1952, and that Mrs. Belle Isle in her will had validly appointed the property specified in the inter vivos documents to the defendant trustees.

416

The plaintiffs except to the judgment in respect to Count II, and the defendants by cross-bill except to the judgment with respect to Count I. *Held:*

The opinion rendered by the able trial judge, Honorable Ralph H. Pharr, so clearly states and correctly disposes of the questions presented that we adopt that opinion as our own. It is as follows:

"The issue presented by Count One is whether or not the clause quoted in paragraph 3 of Count One, being a part of Item 3 (c) of the will of Mrs. Belle Isle, is an in terrorem clause. The clause quoted in paragraph 3 is void insofar as it attempts to impose a forfeiture of any legacy under the will by virtue of a claim to rights under the instruments executed by Mrs. Belle Isle on September 23, 1952.

"Count Two presents the question as to whether or not the plaintiff has any rights by virtue of the document executed by Mrs. Belle Isle on September 23, 1952, copy of which is attached to the petition.

"It is apparent that the intention of Mrs. Belle Isle in September, 1952, was to make a present gift of a 1½% undivided interest in and to the property to which she had the power of appointment under the will of her late husband. In paragraph 2 of the instrument of September 23, 1952, she says: 'Whereas, I now desire to make a gift to my granddaughter Barbara Askew of a 1½% undivided interest in and to said trust and the property thereof, both income and principal.' In the next paragraph she says: 'and for the purpose of making a gift to my said granddaughter, I, Agnes Belle Isle, do hereby transfer, assign, convey and release unto Katherine Askew as Trustee . . . for my said granddaughter Barbara Askew, a 1½% undivided interest in and to said trust'. . . In the next paragraph she says: 'It is my purpose and intent by this trust to divest myself of all right, title, interest, equity or power in regard to a 1½% undivided interest in and to said trust and the property thereof so that after the execution of this instrument I shall have no right, title, interest, equity or power in or to said 1½% undivided interest or the income therefrom.'

"In the succeeding paragraphs she further said: 'It is the purpose of this trust to convey full fee simple title to said 1½% undivided interest to my said grandchild as fully as she is able to receive the same under the law of Georgia.' She

follows that language with a provision that in the event the named grandchild should die before becoming twenty-one years of age, then the property should go to her estate in fee simple.

"It is apparent therefore that Mrs. Belle Isle's sole and specific intention was to make a gift at that time and effective at that time to Barbara Askew of a 1½% undivided interest in the said property.

"This she had no power to do. Under the will giving her the power of appointment, it is provided that 'As my said wife *may by her last Will and Testament* direct or appoint.' [Emphasis supplied.] It is apparent that the power of Mrs. Belle Isle was limited to the power of appointment by her Last Will and Testament and it was impossible therefore for her to make a gift in praesenti on September 23, 1952. That was her intention but she had not the power to carry out that intention.

"There is a further provision in the September 23, 1952, instrument which says, 'I further hereby release my right to exercise my power of appointment, in regard to said 1½% undivided interest in and to said trust, except for the benefit of my said granddaughter, Barbara Askew, or her said Trustee if she is then a minor.' This provision is inconsistent with Mrs. Belle Isle's declared intention to make a gift in praesenti at the time she executed the document of September, 1952. If this provision however were consistent with her declared purpose, it would not avail the petitioner anything except in the event Mrs. Belle Isle exercised the power of appointment. A release of the power of appointment would not help the petitioner nor convey to her any right. It would simply mean that Mrs. Belle Isle released her right to make any other disposition than to her granddaughter, Barbara Askew, but it would not be self executing, but would have to be executed by her by the exercise of the power of appointment in favor of her granddaughter Barbara Askew, in Mrs. Belle Isle's will. Further however, even assuming that this provision is consistent with Mrs. Belle Isle's declared intention (which I do not believe to be true), the provision is invalid under the provision of *Code* § 37-612 (being the Acts of 1945, page 340) because that section authorizes the release or relinquishment of a power of appointment only in event it is a complete release or a release of the right to exercise such power except

among a 'limited class' set out in such release or relinquishment.

"The purported release in the September, 1952, instrument is not in favor of the members of a limited class, but is in favor of a specific individual. It is not therefore the kind of release authorized under the statute.

"The petitioner however insists that she has a right under the language of the September, 1952, instrument which says: 'and I hereby covenant and agree that I will exercise my power of appointment, in regard to a 1½% undivided interest in and to said property, in favor of my said granddaughter or her said Trustee if she is then a minor.'

"It is impossible to reconcile the language of Mrs. Belle Isle in the instrument of September 23, 1952, with the idea of a covenant to exercise the power of appointment. She expressly stated that she intended then and there to make a gift in praesenti and to part with full fee simple title to 1½% undivided interest in said property. That is entirely inconsistent with retaining the power of appointment. She nowhere says that in the event this present gift is ineffective it shall be construed as a covenant to exercise the power of appointment. But she goes to extreme lengths to declare her intention of making a present gift and conveyance in fee simple of the percentage of the property.

"Assuming however that the instrument can be made consistent with a covenant to exercise the power of appointment in favor of Barbara Askew or her Trustee, still it is not such a covenant as is authorized under the provisions of *Code* § 37-612 (Acts of 1945, page 340). If it is a covenant it is a covenant in favor of a particular individual and is not a covenant in favor of the members of a limited class. Being a covenant, if it be such, to exercise the power of appointment in favor of a particular individual, it is not a covenant to exercise the power of appointment in favor of the members of a limited class. It is therefore not within the language of the statute. If it is not within the statute then it would have to be for a consideration and that appears to be absent in this case. It is difficult to reconcile the provisions of the statute which declare that the statute is a declaratory of existing law inasmuch as it authorizes covenants within the statute to be valid and binding 'whether with or without a consideration.'

"While the petitioner alleges that Mrs. Belle Isle executed a similar instrument in favor of each of her twelve grandchildren, it is apparent from the language of the one relied upon by petitioner that each of those instruments is an instrument in favor of a particular individual and is not a covenant to execute a power in favor of the members of a limited class. It is a series of covenants to particular individuals.

"There is another question which is of some concern to the court. If the covenant is relied upon, then it is necessary to scrutinize the language of the covenant to see the extent of the obligation imposed upon the covenantor. The covenant provides that she will exercise her power of appointment in regard to a 1½% undivided interest in and to said property 'in favor of my said granddaughter or her said Trustee if she is then a minor.' It is to be noted that there is absent from the covenant an obligation to exercise it *only* in favor of her said granddaughter or her said Trustee if she is then a minor. There is also absent from the covenant itself any statement as to the obligation of the covenantor to exercise the power of appointment to convey a fee simple estate to the granddaughter or her said Trustee immediately upon her death. In the will, it is clear that she conveys a fee simple estate to her granddaughters upon the death of her children. Thus the fee simple is ultimately to be vested in the granddaughter but is subject to a life income in favor of Mrs. Belle Isle's children. Assuming that the covenant was valid the question is therefore whether or not the will whereby the power of appointment is exercised is a compliance with the covenant. The covenant does not contain the expressed language that there is to be an exercise of the power of appointment in favor of the granddaughter of an immediate fee simple interest upon the death of Mrs. Belle Isle. The power of appointment exercised under the will is therefore an exercise in favor of the granddaughter in regard to a 1½% undivided interest in said property, although it is not a fee simple estate to be vested immediately upon Mrs. Belle Isle's death. If we construe the language of the whole document it is apparent that Mrs. Belle Isle intended to convey in praesenti a fee simple interest not upon her death but upon the date of the execution and delivery of the instrument. Are we to say that the part of her intent relative to a fee simple interest carried over into the covenant and assume

that her gift in praesenti would be invalid and that there is implied the obligation to convey a fee simple estate upon her death? Are all of the provisions expressing her intent to be applied to the covenant? This makes more ambiguous than ever the presence of the covenant in the instrument itself and makes it impossible to discern clearly any effective intent of Mrs. Belle Isle as to the execution of a covenant.

"For the reasons stated above the prayers of Count Two of the petition are denied and it is adjudged that the plaintiff is not entitled to take anything by virtue of the September 23, 1952, agreement. It is further adjudicated that the provision of Mrs. Belle Isle's will exercising the power of appointment is a valid exercise of that power of appointment and that the property covered under said power of appointment shall go as provided in Mrs. Belle Isle's will."

See *Snellings v. Downer,* 193 Ga. 340 (18 S. E. 2d 531, 139 A. L. R. 860); *Hurst v. McKissack,* 209 Ga. 440, 443 (73 S. E. 2d 91); *Barfield v. Aiken,* 209 Ga. 483, 489 (74 S. E. 2d 100).

*Judgment affirmed on the main bill of exceptions; cross-bill of exceptions dismissed. All the Justices concur, except Duckworth, C. J., and Head, P. J., who dissent.*

ARGUED JULY 12, 1960—DECIDED OCTOBER 6, 1960—
REHEARING DENIED OCTOBER 25, 1960.

*William H. Schroder, Allen E. Lockerman, Tench Coxe, Troutman, Sams, Schroder & Lockerman,* for plaintiffs in error.

*Candler, Cox, McClain & Andrews, John S. Candler, II,* contra.

DUCKWORTH, Chief Justice, dissenting. The testator indisputably desired and intended, and in fact did, by executing the power of appointment, vest in his wife sole power to dispose of the property therein, without limitation, and even to utter strangers if she so desired. By executing the covenant that she would appoint the described property to her grandchildren, she thereby manifested beyond dispute her desire. When all this has been effectuated, the known wish of the only two persons entitled to have a wish has been completely fulfilled. Now what are the insuperable obstacles to this court's allowing those known wishes to be fulfilled? Undoubtedly, we should allow

them to be defeated only if there are compelling legal grounds that demand their defeat.

The majority attach legal importance to the fact that the instrument containing the covenant to appoint grandchildren contains another clause purporting to convey *in praesenti* the property, which is prima facie void. Seemingly, they conclude that such void clause renders invalid the covenant clause. Such reasoning instantly collides with the legal principle, well stated in *Restatement of the Law, Trusts* (2d), § 65, as follows: "If a provision in the terms of the trust is illegal, the trust fails altogether if, but only if, the illegal provision cannot be separaated from the other provisions without defeating the purpose of the settlor in creating the trust." This same principle of law has been applied in our statutory law in both wills and contracts. See *Code* §§ 113-108 and 20-501. See also the following decisions of this court dealing with the same general legal principle in cases involving the construction of statutes, restrictive covenants in contracts, and other invalid covenants in contracts: *Chandler v. Johnson*, 39 Ga. 85; *Carroll v. Ragsdale*, 192 Ga. 118, 120 (15 S. E. 2d 210), and citations contained therein; *Love v. Fulton National Bank*, 213 Ga. 887, 893 (102 S. E. 2d 488); *Aladdin v. Krasnoff*, 214 Ga. 519, 520 (105 S. E. 2d 730). What is the proper and legitimate function of courts in such matters? Ascertainment and effectuation of the intent as evidenced by the document. Obviously, if the clause containing the covenant here relied upon in any degree, however remote, is made dependent upon the conflicting clause which is invalid, it must meet the fate of such clause; but, since it is in no wise connected with or dependent upon such invalid clause, it is likewise unaffected by the infirmities of that clause. This recital of hard facts ought to eliminate completely all such invalid clauses from a search for the meaning and validity of the clause here involved.

When the majority come to grips with this valid clause, they instantaneously becloud it by seizing upon the fact that, instead of one document dealing with all twelve grandchildren, twelve simultaneous, separate but identical, documents, each referring to only one of the twelve grandchildren, were employed, and by

this reasoning conclude that the covenants are not to "members of a limited class" as provided in the law (*Code Ann.* § 37-612; Ga. L. 1945, p. 340). They are wrong for two reasons, either of which demands a contrary conclusion, to wit: (1) Since the law authorizes a covenant to appoint to members of a limited class, it authorizes such covenant in behalf of any single member of that class. If it includes all of them, then obviously it must include each of them. Thus, when covenanted to a grandchild who is a member of the class "grandchildren," the beneficiary of the covenant is a person whom the law allows to receive such a covenant to appoint. *Averit v. Alleam,* 23 Ga. 382. (2) But if plain English and sound logic, which support the foregoing, be rejected in order to conclude that the covenant must embrace all the members of the class, then the facts and law demand the conclusion that this case meets that test. Documents dealing with the same subject matter—executed as these twelve covenants were, simultaneously, and being identical, save as each contains the name of only one of the twelve grandchildren, and describes different percentages of the property— must be construed together, and in legal effect, are the equivalent of one document, containing all twelve grandchildren, and defining their respective shares. *Anderson v. Brown,* 72 Ga. 713; *Read v. Gould,* 139 Ga. 499, 504 (77 S. E. 642); *Dyal v. Foy & Shemwell, Inc.,* 159 Ga. 848 (126 S. E. 783); *Mathewson v. Brigman Motors Co.,* 23 Ga. App. 304, 305 (98 S. E. 98); *Albany Federal Savings &c. Assn. v. Henderson,* 200 Ga. 79, 112 (36 S. E. 2d 330). In addition, the record discloses that the parties stipulated that all the instruments were the same, and the petition in this case alleges the execution of twelve identical covenants to all twelve grandchildren. To even contend that, since the power to appoint directs that it be done by will, and the testator provided that if not so exercised, the property would revert to testator's estate and be placed in a trust fund, the covenant to appoint, executed pursuant to law, is invalid, is simply to ignore the plain law and refuse to allow the donee of the covenant her clear rights under the law. Such rights can not be destroyed by a failure to obey the covenant. Indisputably, the covenantor had a duty to appoint by will, and if in life,

a court of equity would compel performance. But death before performance can not take away a single "jot nor tittle" from the covenantee because, as held in *Crawford v. Wilson*, 139 Ga. 654, 658 (78 S. E. 30, 44 L. R. A. (NS) 773), equity considers done that which ought to be done and decrees accordingly. To the same effect see *Gordon v. Spellman*, 145 Ga. 682, 685 (89 S. E. 749, Ann. Cas. 1918A 852).

Of course, in cases seeking specific performance, it must appear that the contract is fair and just, and, where a consideration is involved, it must be shown as well as the value in order to enable the court to determine if it is just. But in this case such criteria are neither required nor relevant. Here the covenant is just and fair because the law provides for it. To pay a consideration therefor would cause the covenantor to violate her trust. She was not given the property nor any interest therein except the privilege of giving, not selling, it to whomsoever she chose. By this covenant she made that choice. For the court to refuse to enforce it would be judicial nullification of a solemn act of the legislature, the validity of which has not been questioned.

The court should obey the mandate of the law, protect the right given thereunder, and decree title in accord with the covenant. The will did not convey as the covenant demands because limitations are placed thereon. For all the foregoing reasons I dissent.